300 So.2d 350

Louise L. BETHUNE et al.

v.

CITY OF MOUNTAIN BROOK, a municipal corporation.

SC 689.

Supreme Court of Alabama.

Sept. 5, 1974.

Rehearing Denied Oct. 3, 1974.

Donald L. Collins and A. Eric Johnston, Birmingham, for appellants.

Cabaniss, Johnston, Gardner, Dumas & O'Neal and L. Vastine Stabler, Jr., and Jack T. Camp, Birmingham, for appellee.

MADDOX, Justice.*

This appeal raises these questions:

1. Can a municipality agree to permit a real estate developer to file a subdivision plat at a later time?

2. Can a municipality enter into an oral agreement?

3. Were there disputed material facts presented which would prevent the entry of a summary judgment?

The Bethunes (appellants) owned property adjacent to property bought by the Board of Education of the City of Mountain Brook from Nelson Weaver Mortgage Co., Inc. for a school. The Bethunes and the Mountain Brook Board of Education entered into an agreement in which the Bethunes agreed to build two streets across their property to the school property.

One of the conditions of the purchase agreement made by and between the Mountain Brook Board of Education and Nelson Weaver Mortgage Co., Inc. was "that Bethune Drive and Crosshill Road shall be extended and completed on or before December 31, 1965 * * *" across the property owned by the Bethunes. The Bethunes entered into a written contract with the Board of Education wherein they agreed to "cause Bethune Drive and Crosshill Road to be extended and completed in strict compliance with the requirements of the City of Mountain Brook as public streets * * * said Bethune Drive and Crosshill Road to be located as shown in that certain map designated as Preliminary Plan of Westbury Addition to Mountain Brook * * * a copy of which has heretofore been filed with the Planning Commission of the City of Mountain Brook * * * and said Bethune Drive and Crosshill Road, as shown on said map as aforesaid, shall be dedicated to public use upon final approval by the Planning Commission of the City of Mountain Brook."

The Bethunes built the streets. They were dedicated to the City. The Bethunes claim that when the City accepted dedication of the streets, the City approved the plat and agreed to allow them to file the subdivision plat at a later date. The City refused to accept the plat when the Bethunes offered to file it in 1971. The Bethunes subsequently filed this lawsuit, claiming damages because of the alleged breach by the City of its agreement to allow the late filing. The City answered the suit and admitted that it accepted the streets on March 27, 1967. The City also admitted that it had denied, in December 1971, the property owners' request to admit the subdivision plat to be recorded, however, the City denies that it made any agreement to allow the plat to be recorded at a later time.

The City also says that if any agreement was made, it was void because: (1) it was not in writing as required by Title 37, § 467, Code of Alabama, 1940; (2) the approval of subdivision plats is a legislative function and any attempt by one council to bind the exercise of that function would be void and contrary to public policy.

Title 37, § 467, provides:

"Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town, by the officers authorized to make the same, and by the party contracting. In cases not otherwise directed by law, or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds, and interest coupons, shall be attested by the clerk. This section shall not be construed to cover purchases for the ordinary needs of the municipality."

The Bethunes admit the agreement was not in writing.

---

* The writer of this opinion was not sitting when the oral arguments were presented. However, the writer has listened to tape recordings of the entire oral arguments. In fact, the writer has listened to some portions of the oral arguments more than once.

■ We cannot accept the City's argument that any agreements made by a city which are not in writing are void. The City cites City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816 (1919), to support its position. We concede that the original opinion in the *City of Mobile* case is authority for the proposition that the statutory method of contracting by a municipality must be strictly followed. However, on application for rehearing, this Court noted in the *City of Mobile* case:

"We feel that the questions treated in the original opinion have been properly decided, and that it is needless to prolong the discussion of same, but will merely add that we are not in disagreement with counsel in the slightest in the assertion that a literal compliance, even with a mandatory statute, is not essential, or that a substantial compliance would not suffice. Here, however, there was no substantial, or even attempted, compliance with one of the most important and mandatory requirements of section 1183 of the Code."

The Bethunes argue that, even though the agreement was not in writing, the City of Mountain Brook had the capacity to make the agreement and the City is estopped to deny that a contract existed, especially since the City accepted the dedicated streets and used them and continues to use them. We note that the Bethunes, according to the evidence, spent substantial sums in constructing the streets.

■ Of course, it is well settled in Alabama that an executory agreement which is void under the statute of frauds cannot be made effectual by estoppel merely because it has been acted on by the promisee, and has not been performed by the promisor. Hurst v. Thomas, 265 Ala. 398, 91 So.2d 692 (1956). See also Cox v. Cox, 292 Ala. 106, 289 So.2d 609 (1974). Here, however, there was evidence presented that the City accepted benefits under the implied contract. Furthermore, the Bethunes claimed they had fully performed.

■ The law is to the effect that, provided a contract is within the scope of its corporate powers, a municipal corporation may be held liable on an implied contract, either where the contract is implied in fact from corporate acts, or is implied in law, to prevent the municipality from enriching itself by accepting and retaining benefits without paying just compensation therefor. 63 C.J.S. Municipal Corporations § 975, p. 524. In Greeson Mfg. Co. v. County Board of Education, 217 Ala. 565, 117 So. 163 (1928), this Court held:

" '* * * The doctrine of implied municipal liability applies to cases where money or property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect .to the same. If the city obtain money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or, if used by her, to render an equivalent to the true owner, from the like general obligation; the law, which always intends justice, implies a promise.' "

Since any implied contract must be within the scope of corporate powers, the only question remaining is whether the alleged contract here was in the corporate power. The Bethunes contend the City had capacity to contract under the facts of this case. The City, on the other hand, claims that the acceptance of subdivision plats is a legislative or governmental function, and that a city cannot make a binding contract for the discharge of a purely public duty.

The Bethunes sued upon the alleged contract and asked for money damages because of its alleged breach. As we understand the Bethunes' argument, they claim that when the City accepted the streets, it

then approved the subdivision plat, but agreed to allow the Bethunes to file the plat at a later date, because an earlier filing would have had adverse tax consequences for the Bethunes. The Bethunes have not requested, in the pleadings here, that they now be allowed to file the subdivision plat they say was approved. They seek damages because of the alleged breach of the City's implied agreement to allow them to file the plat at a later time.

■ According to the pleadings and the affidavits, as we view them, the Bethunes claim they received approval of their plat (with a deferred filing date) in consideration of their dedication of the two streets to the City. There is some evidence that the City was vitally interested in getting the two streets opened up to Mountain Brook High School. The City does not necessarily deny this, but says that the Bethunes were merely complying with the contractual obligation made by and between them and the Board of Education. These are disputed facts. This dispute over the facts shows that this was an inappropriate case for summary judgment. Rule 56, Alabama Rules of Civil Procedure. Therefore, we think the trial court erred in granting the City's motion for summary judgment.

If the Bethunes can prove their claim that the City accepted the streets and impliedly agreed to give something in return, the Bethunes would be entitled to recover the reasonable value of the benefits which the City has accepted, used and retained.

■ The City defended its action in the trial court and in this Court on the legal ground that it could not bind itself for the discharge of a public duty. That legal principle, abstractly, is correct, but if the City retained the benefits of the dedication, and if the City impliedly agreed to give something in return, it cannot escape the payment of a consideration. The City apparently elected not to allow the Bethunes to file the original plat—which was the alleged consideration for the Bethunes'

dedicating the streets to the City. Certainly, the City had authority to accept the dedication of the streets. The case here is not wholly unlike the case of Water Works and Sanitary Sewer Board v. Campbell, 267 Ala. 561, 103 So.2d 165 (1958). There, this Court upheld a covenant between the City and property owners' predecessor in title whereby the City agreed not to charge for sewer service in consideration of an easement across the predecessors' property to construct and maintain a sewer line. This Court there said:

"It is conceded that 'when the city is operating a utility for public use, it is engaged in a proprietary or business enterprise,' and the operation of the system by appellant is not a governmental function. Waterworks and Sanitary Sewer Board v. Dean, 260 Ala. 221, 69 So.2d 704, 707. We think the following from Coit v. City of Grand Rapids, 115 Mich. 493, 73 N.W. 811, 813, where the city acquired an easement for a sewer and in return covenanted that the lands should not be assessed for the construction and maintenance of the sewer, is applicable here:

" '* * * The contract was fairly and in good faith made, and is fully executed. The city had derived, and is in the full enjoyment of, all its benefits. It cannot and does not offer to restore the consideration or place plaintiffs in statu quo. If we conceded the premises assumed by defendant, viz. that the contract was wholly ultra vires, we might be compelled to reach the conclusion that the city could not be estopped to set up its invalidity. The defense of ultra vires in this case is most inequitable and unjust. It should not be sustained unless the rigid rules of law require it. "The good faith of government should never be held less sacred than that of individuals." * * *'

"Certain it is that as between individuals, we would enforce the contract before us. The legal obligation and moral-

ity of the city or one of its boards should equal that of the marketplace."

The City cannot escape payment to the Bethunes for what it received from them, that is, if the Bethunes can prove their claim of an implied contract. Since many of the facts are seriously disputed, however, this opinion should not be construed as holding that there was an implied contract or that this Court believes the facts are favorable to one side or the other.

We do hold that this case was inappropriate for the entry of a summary judgment.

The cause is reversed and remanded.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.